UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ANGELA LOONSFOOT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:18-CV-00059-NCC |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Angela Loonsfoot ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff filed a brief in support of the Complaint (Doc. 16), Defendant filed a brief in support of the Answer (Doc. 23), and Plaintiff filed a reply brief (Doc. 24). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

## I. PROCEDURAL HISTORY

Plaintiff filed her applications for SSI and DIB on March 27, 2015 (Tr. 193-205). Plaintiff was initially denied on July 21, 2015, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") on August 19, 2015 (Tr. 118-24, 126-27). After a hearing,

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

by decision dated August 14, 2017, the ALJ found Plaintiff not disabled (Tr. 12-31). On May 18, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020, and that Plaintiff has not engaged in substantial gainful activity since December 15, 2014, the alleged onset date (Tr. 17). The ALJ found Plaintiff has the severe impairments of pancytopenia with thrombocytopenia,[2] alcoholism, peripheral neuropathy, cervical spine spondylosis, iron deficiency, and liver cirrhosis, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17-18). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work[3] with the following exertional[4] limitations (Tr. 19). She can no more than occasionally climb ladders, ropes, or scaffolds (*Id.*). She can no more than occasionally climb ramps or stairs (*Id.*). She can no more than occasionally balance, stoop, kneel, crouch, or crawl (*Id.*). She must never be exposed to unprotected heights, moving mechanical parts, or vibrations

---

[2] Pancytopenia is characterized by a pronounced reduction in the number of erythrocytes, all types of leukocytes, and the blood platelets in the circulating blood. Stedman's Medical Dictionary, 646930 (2014). Thrombocytopenia is a condition in which an abnormally small number of platelets is present in the circulating blood. *Id.* at 918040.

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 416.967(b), 404.1567.

[4] The ALJ incorrectly indicates that the limitations are nonexertional in nature.

2

(*Id.*). She must never be required to operate a motor vehicle as a job duty (*Id.*). The ALJ found Plaintiff capable of performing past relevant work as a general clerk and a laundry worker (Tr. 24). In the alternative, the ALJ found that other jobs exist in significant numbers in the national economy that Plaintiff can also perform including cashier II and office helper (Tr. 25-26). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 26). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d).

3

If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's

conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id*. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff asserts that the ALJ erred in failing to give controlling weight to treating physician, Dr. Larry Nichols' opinion (Doc. 16 at 7-12).[5] Second, Plaintiff argues that the ALJ's RFC is not supported by substantial evidence (*Id.* at 12-16).[6] For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

---

[5] The parties do not dispute that Dr. Nichols is Plaintiff's treating physician (*See* Doc. 16 at 8; Doc. 23 at 10-11).

[6] Plaintiff does not raise any arguments regarding the ALJ's evaluation of her mental health impairments. Accordingly, the Court will only address Plaintiff's physical impairments.

5

**A. Opinion of Treating Physician Dr. Larry Nichols, D.O.**

First, Plaintiff asserts that the ALJ erred in failing to give controlling weight to treating physician Dr. Larry Nichols' opinion. *See* 20 C.F. R. §§ 404.1527(c), 416.927(c);[7] *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015). "A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Id.* at 909 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotation marks omitted). Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must "give good reasons" for doing so. *Prosch*, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)).

The ALJ properly considered the opinion of Dr. Larry Nichols, D.O. ("Dr. Nichols"), Plaintiff's treating physician, affording the opinion "limited" weight (Tr. 23). On March 28, 2016, Dr. Nichols completed a Medical Source Statement in which he opined that Plaintiff can lift less than ten pounds occasionally, stand and walk less than two hours out of an eight-hour day, and sit less than two hours out of an eight-hour day (Tr. 438). Dr. Nichols further indicated that Plaintiff would need to lie down three to four times during an 8-hour work day, would need hourly breaks, and would miss more than four days of work per month (*Id.*). The ALJ found Dr.

---

[7] Under current regulations, a treating physician's opinion is entitled to no special deference. *See* 20 C.F.R. § 404.1520c(c). These regulations were effective as of March 27, 2017. 20 C.F.R. § 404.1527. However, Plaintiff's claim was filed on March 27, 2015, so the old regulations apply.

6

Nichols opinions to "stand alone with limitations that were not mentioned in his records of treatment and are not supported by objective testing or reasoning" (Tr. 23). Specifically, the ALJ noted that Dr. Nichols pattern of treatment for Plaintiff was "generally conservative without escalating modalities and [his] physical examinations of the [Plaintiff] do not support the opined limitations" (*Id.*).

The ALJ properly considered that Dr. Nichols' opinion was inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."). Indeed, the record reflects that while Plaintiff received multiple transfusions in 2015 and five platelet transfusions in 2016 as treatment for her thrombocytopenia, she has not received another transfusion since August 2016 (Tr. 58, 561, 599, 604, 608, 613-28, 645-61). *See also* Tr. 745 (January 2017 medical record indicating, "She has been doing well, has not had transfusion since August."). Also, a bone marrow biopsy test result in August 2015 was "essentially normal except for depleted iron stores suggestive of iron deficiency" leading to an assessment that Plaintiff pancytopenia with predominant thrombocytopenia is likely alcoholic bone marrow suppression (Tr. 566-68, 572). *See also* Tr. 575 (Plaintiff "returns to clinic for followup [sic] on her pancytopenia, which is determined to be related to her underlying alcoholic bone marrow suppression and is requiring supportive therapy only."). In fact, Dr. Nichols reported continued alcohol use in April of 2016 ("Now immediately I noticed a very strong smell of alcohol on her, but she denies drinking last night or this morning, so she is obviously not being honest with me, there is no question that I could smell it."). Physical exams in the record were generally normal. For example, records indicate normal power in the upper and lower extremities, steady gait with normal tandem walking, negative straight leg testing, adequate range of motion and,

7

occasionally, no symptoms (Tr. 419, 434, 524-25, 604, 629, 701-02, 708, 747). A June 2015 MRI of Plaintiff's cervical spine was also largely unremarkable, finding mild cervical spondylosis with disc bulges and protrusions from C3-4 through C5-6, no foraminal stenosis, and up to mild to moderate spinal stenosis (Tr. 512-13). Similarly, a November 2015 MRI of Plaintiff's lumbar spine indicated only mild lumbar spondylosis (Tr. 514-15). While a June 2015 Electromyography and Nerve Conduction Report was abnormal, a physician found her responses regarding her sensory examinations to be "somewhat inconsistent" noting that her sensory disturbances could be related to a "diffuse sensorimotor polyneuropathy" (Tr. 511, 525, 526, 540).

Further, the record reflects that Dr. Nichols' opinion is inconsistent with his own notes. Plaintiff restarted treatment with Dr. Nichols in May of 2015 after nearly a year and a half hiatus (Tr. 399). The records from May 2015 forward are largely unremarkable. For example, at a visit in July of 2015, Dr. Nichols noted increased bruising but declined to prescribe narcotics despite Plaintiff's request (Tr. 550). While Dr. Nichols subsequently found Plaintiff to have "increased weakness" in her left foot, he generally reported normal findings (Tr. 581, 591, 698). An ALJ may properly discredit a treating physician's opinion when the limitations provided on the medical source statement are inconsistent with the physician's own treatment notes. *Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014).

Moreover, the ALJ noted that Dr. Nichols opinions "consist primarily of a standardized, check-the-box form in which he failed to provide supporting reasoning or clinical findings, which renders his opinions less persuasive" (Tr. 23). An ALJ may properly discount an opinion when it is in checklist form, cites to no medical evidence, and provides little to no elaboration.

*Johnson v. Astrue*, 628 F.3d 991, 994 (8th Cir. 2011); *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010).

Although the ALJ did not address all of the non-controlling factors found in 20 C.F.R. §§ 404.1527(c), 416.927(c), the ALJ is not required to cite specifically to the regulations but need only clarify whether she discounted the opinions and why. *Kientzy v. Colvin*, No. 4:15CV707 JMB, 2016 WL 4011322, at *8 (E.D. Mo. July 27, 2016) (citing *Grable v. Colvin*, 770 F.3d 1196, 1201-02 (8th Cir. 2014)). Accordingly, the ALJ properly offered a sufficient basis to give the opinion "non-*substantial* weight" in addition to "[non-]*controlling* weight." *Milam*, 794 F.3d at 983; *Papesh*, 786 F.3d at 1132 (emphasis in original) (internal citations omitted) (finding error when the ALJ offered no basis to give an opinion non-substantial weight; "For example, the ALJ did not find the opinion inconsistent with the record or another [of the physician's own] opinion[s].").

**B. RFC**

Next, Plaintiff argues that the ALJ's RFC is not supported by substantial evidence (Doc. 16 at 12-16). Regulations define RFC as "what [the claimant] can do" despite her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent

9

of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted). Here, Plaintiff specifically asserts that the ALJ failed to properly evaluate her subjective complaints as they relate to her allegations of pain and fatigue and her activities of daily living (Doc. 16 at 12-16).

Before determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)). In assessing a claimant's credibility, an ALJ "must consider all of the evidence related to the subjective complaints, the claimant's daily activities, observations of third parties, and the reports of treating and examining physicians." *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

"It is well-settled that an ALJ may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Goff*, 421 F.3d at 792 (quoting *O'Donnell v. Barnhart*, 318 F.3d 811, 816 (8th Cir. 2003)). "However, '[t]he ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole.'" *Id.* (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) (citing *Russell v. Sullivan*, 950 F.2d 542, 545 (8th Cir. 1991)).

The Court finds that the ALJ's RFC determination was based on substantial evidence. As previously discussed, the ALJ found Plaintiff has the RFC to perform light work with the following exertional limitations (Tr. 19). She can do no more than occasionally climb ladders, ropes, or scaffolds (*Id.*). She can do no more than occasionally climb ramps or stairs (*Id.*). She can do no more than occasionally balance, stoop, kneel, crouch, or crawl (*Id.*). She must never be exposed to unprotected heights, moving mechanical parts, or vibrations (*Id.*). She must never be required to operate a motor vehicle as a job duty (*Id.*). In doing so, the ALJ found the objective medical evidence does not support Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms (Tr. 20). "[A]n ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).

As it relates to pain, the ALJ specifically found that Plaintiff's treatment has been essentially routine or conservative in nature, consisting essentially of prescription medication without any evidence of escalating treatment modalities (Tr. 22). The ALJ further determined that this conservative treatment has been "relatively effective at controlling her symptoms" (*Id.*). Contrary to Plaintiff's assertions, an ALJ may properly rely on limited treatment modalities for pain in her assessment of Plaintiff's subjective complaints. *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability."). Indeed, upon a complete review of the record, the Court finds that Plaintiff was never referred to, nor considered for, more extensive pain management and, therefore, Plaintiff's pain treatment consisted of only pain medication (*See, e.g.,* Tr. 539-41 (reporting "without complaints of discomfort" but "some tightness with extension" and

indicating pain medication as "Tramadol p.r.n." with the addition of "naproxen 500 mg" twice daily); 553 (discontinuation of the naproxen two months later)). When offered the opportunity of a referral to a neuromuscular clinic for further evaluation and a second opinion, Plaintiff declined this option (Tr. 547). The ALJ also indicated that she considered the dosage, effectiveness, and side effects of Plaintiff's medication and while the ALJ did not detail her review in the area, Plaintiff did not mention any side effects of her medication during her hearing testimony and the record does not note any side effects from her medication (Tr. 70-71). *Cf. Noah v. Astrue*, No. 2:10CV56LMB, 2011 WL 4435086 at *9 (remanding the ALJ's decision, in part, because the ALJ did not explain how plaintiff's testimony regarding his limitations and the side effects of his medications was inconsistent with the record).

The ALJ also properly reviewed Plaintiff's activities of daily living, finding Plaintiff to have engaged in substantial activities of daily living which is inconsistent with her complaints of disabling symptoms and limitations (Tr. 22). Specifically, the ALJ noted that Plaintiff reported "no problems with personal care" and that Plaintiff could "prepare simple meals, clean, launder, go outside every day, walk, go out alone, go shopping, manage her finances, watch television, message her son, and talk to people she see while walking" (*Id.*). The ALJ also indicated that "[t]he record does not reflect significant difficulties with cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for her grooming and hygiene, using telephones and directories, or using a post office" (*Id.*). Indeed, the record indicates that Plaintiff was working for about 10 hours a week in home health care during the disability period (Tr. 224, 228, 248 ("Take care of client 1.75 hrs"), 256 (indicating that in her job she walks 2 miles a day, stands for 6 hours a day, and sits for 4 hours a day), 342). In her Function Report, Plaintiff reported that she has no problems with personal care and that she

cooks, cleans, does housekeeping and laundry, and shops two to three times a week (Tr. 248, 250). While Plaintiff has identified some instances in which her activities are limited, "acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Goff*, 421 F.3d at 792 (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir. 2001)). *See also Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility.").

The Court notes that Plaintiff raises several other issues in passing without providing much, if any argument (*See e.g. id.* at 12 (briefly suggesting the ALJ failed to include a narrative discussion describing how the evidence supports each conclusion in his decision)). More specifically, Plaintiff takes issue with the ALJ's interpretation of Plaintiff's June 2015 Electromyography & Nerve Conduction Report ("EMG") (Doc. 16 at 11; Tr. 21). Upon review of the EMG, as noted by the Defendant, the physician indicated that the testing "did not show definitive evidence of diffuse polyneuropathy" (Tr. 546). Additionally, Plaintiff includes a line, without any supporting law, asserting that the ALJ's finding that Plaintiff can "occasionally climb ladders, ropes or scaffolds" is inconsistent with her limitation that Plaintiff "must never be exposed to unprotected heights" (Doc. 16 at 12; Tr. 19). However, again, these concepts are not inherently in conflict as one is a postural limitation (ability to climb) and the other is an environmental limitation (exposure to heights). *See* Social Security Ruling 96-9P, 1996 WL 374185 (July 2, 1996) (explaining the difference in the context of a finding of a residual functional capacity for less than a full range of sedentary work).

Finally, to the extent the Plaintiff identifies records that support Plaintiff's allegations, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent

conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

In conclusion, the Court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, as well as the evaluation of Plaintiff's subjective complaints.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 20th day of September, 2019.

      /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE